IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DWAYNE COLLINS, | § | |
|     Petitioner | § | |
| | § | |
| VS. | § | C.A. NO. C-05-013 |
| | § | |
| DOUG DRETKE, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE–INSTITUTIONAL DIVISION, | § | |
|     Respondent | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), and currently is incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se* and *in forma pauperis,* petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on October 21, 2004 (D.E. 1). Petitioner makes the following due process claims in reference to a disciplinary hearing which resulted in the imposition of punishment: (1) TDCJ-ID officials failed to disclose evidence petitioner could have used to impeach witnesses; (2) The punishment imposed was excessive and against the great weight of the evidence and preponderance of the evidence; (3) Petitioner was denied effective assistance of a counsel substitute and was not provided counsel to help him after the disciplinary hearing; (4) The hearing officer relied on perjured testimony and false evidence to find petitioner guilty; (5) The hearing officer disregarded petitioner's testimony and that of his witnesses at the hearing and (6) The hearing officer did not require the charging officer to testify in person at the hearing.

Respondent filed a motion for summary judgment on March 17, 2005 (D.E. 10). Petitioner did not respond to the motion, but on March 28 he mailed a letter to the Clerk of the Southern

District of Texas stating that he was "no way in the position to file such a case because of the strong act of retaliation that has been imposed upon [him]." (D.E. 12). In the letter, he said he was not guilty of the disciplinary infraction and added that friends of his former cell mate were threatening to kill him if he filed the civil action or if he continued the "writ [he has] in court." He also said that TDCJ-ID officials had taken his identification card so that he cannot purchase writing material from the commissary and that they had opened some of his legal mail without his being present. Finally, he asked to be transferred off the McConnell Unit (Id.).[1]

## BACKGROUND

Petitioner currently is serving a 45-year sentence for robbery, a second degree felony (D.E. 1, p. 2; Judgment and Indictment, p. 2).[2] He does not complain about his holding conviction, but challenges the results of a disciplinary hearing. In disciplinary case number 20040343517 petitioner was accused and found guilty of possessing a weapon intended to be used to injure another person, namely a 9 3/4 inch piece of metal rod sharpened at one end and wrapped in cloth at the other end (Disp. Hrg. Recs., p. 1).

In the offense report, the charging officer, J. Andrade, wrote that on August 2, 2004 he was working as a rover in 4 Building, D Pod and while conducting a search of petitioner's cell he found the weapon under petitioner's mattress (Disp. Hrg. Recs., p. 2). During the pre-hearing investigation and at the hearing, petitioner maintained that the weapon belonged to his cell-mate

_____

[1]Petitioner's claims that he is in danger of harm by other inmates because he filed this petition for relief and his request for a transfer will are claims which sound in tort, and will not be addressed in this Memorandum and Recommendation. Petitioner may exhaust his administrative remedies with regard to those claims and file a civil lawsuit pursuant to 42 U.S.C. § 1983 requesting injunctive relief.

[2]All of the evidence submitted in support of respondent's motion for summary judgment is located at D.E. 11.

but that his cell-mate had placed it under petitioner's  mattress and then reported to prison officials that petitioner had a weapon (Disp. Hrg. Recs., pp. 13, 15).

Petitioner submitted four written statements from inmate witnesses.  Inmate Willie Harvey stated that someone had stolen property from petitioner's cell-mate and that the cell-mate and Officer Andrade spoke in Spanish to each other right before Andrade went in and found the weapon (Disp. Hrg. Recs., p. 9).  Inmate Paul Darthard stated that he saw petitioner's cell mate "throw a kite" to Sergeant Dancer and the next day he heard about petitioner being locked up (Disp. Hrg. Recs., p. 10).  Inmate Jessie Maxwell stated that Andrade searched the cell three times without finding anything while petitioner waited outside the cell.  Then, Andrade allowed petitioner's cell-mate to enter the cell while petitioner stayed outside.  Andrade returned, called the cell-mate out of the cell and then searched the cell a fourth time, coming out carrying a sheet and the weapon (Disp. Hrg. Recs., p. 11).  Inmate Darron Lehman stated that Falcon accused petitioner of stealing his property.  Andrade searched his cell three times, first coming out of the cell with a sheet and then with the weapon (Disp. Hrg. Recs, p. 12).

At the hearing, the charging officer testified by telephone that Sgt. Dancer told him that she had been told that petitioner had a weapon under his mattress and he searched the cell and found the weapon under petitioner's mattress.  Sgt. Dancer stated that she found a note on her desk stating that petitioner had a weapon and it might be hidden under his mattress so she ordered a search of the cell where the weapon was found.  She did not see who placed the note on her desk (Disp. Hrg. Recs, pp. 15-16).

Petitioner was found guilty based on the offense report and the charging officer's testimony at the hearing.  He was punished with loss of 30 days of commissary and recreation privileges, solitary confinement for 15 days, a reduction in line class from S3 to L2 and the loss of 60 days of

good time (Disp. Hrg. Recs., p. 1).  Petitioner filed four Step 1 grievances complaining about the results of the disciplinary hearing, but three of them were returned to him because they were redundant.  The one that was considered was grievance number 2004228844 (Disp. Grv. Recs. pp. 1-12).  On September 28, 2004 petitioner received a response to his Step 1 grievance wherein Warden Castillo stated that a review of disciplinary case number 20040343517 had been completed and a preponderance of the evidence presented justified the finding of guilt and punishment imposed (Disp. Grv. Recs, pp. 1-2).  Petitioner filed a Step 2 grievance on October 4, 2004 and received a reply on October 26, 2004 from Kelli Ward who stated that there was sufficient evidence to support a finding of guilt and that petitioner suffered no due process violations (Disp. Grv. Recs. pp. 11-12).

In his motion for summary judgment, respondent argues that petitioner is not entitled to relief because he is ineligible for mandatory supervision.  Respondent also argues that petitioner did not exhaust his claims in TDCJ-ID's administrative appeals process and that the claims are now procedurally defaulted.  In addition, respondent argues that petitioner is not entitled to relief on the merits.

## APPLICABLE LAW

### A.  Exhaustion of Administrative Remedies

Before a federal court can grant an application for writ of habeas corpus, an applicant must have exhausted the remedies available in the courts of the state.  28 U.S.C. § 2254(b)(1).  "To exhaust available state remedies, a habeas petitioner must fairly apprise the highest court of his state of the federal rights which were allegedly violated."  Shute v. State of Texas, 117 F.3d 233, 237 (5th Cir. 1997)(internal quotations omitted).  But, because Texas state courts do not review

claims of lost good time or other results of prison disciplinary proceedings, a petitioner is required to pursue his claims through the administrative appeals process rather than state court.  Ex Parte Palomo, 759 S.W.2d 671, 674 (Tex. Crim.App. 1988); Ex parte Brager, 704 S.W.2d 46 (Tex. Crim. App. 1985).  The exhaustion requirement is mandatory and the administrative grievance procedure must be completed before a prisoner can file a law suit in federal court.  Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998).  Notwithstanding a petitioner's failure to exhaust state remedies, an application for a writ of habeas corpus may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Respondent argues that petitioner failed to submit the issues he raises in his petition in his Step 1 and Step 2 grievances.  In a footnote, respondent argues that petitioner failed to raise federal constitutional issues in his grievances (D.E. 10, p. 6, n. 1).  Respondent does not point to any particular issue not raised by petitioner in his grievances.

The Fifth Circuit discussed how much detail is necessary in a prison grievance form in Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004).  The Court noted that it has given relatively little guidance on what a prisoner must say in a grievance to properly exhaust his claims and added that as a general matter, courts typically use a standard according to which a grievance should give prison officials fair notice of the problem that will form the basis of the prisoner's suit.

> In deciding how much detail is required in a given case, we believe that a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials time and opportunity to address complaints internally.  Thus, a grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit.

Id. at 516-517 (internal quotations and citations omitted).  The court added that the prison system's own rules regarding grievances provide both inmates and the courts with more specific guidance and noted that because prisoners are generally required to follow the procedures adopted by the

state prison system, the specificity requirement should be interpreted in light of the grievance rules of the particular prison system.  Id. at 517.

In this case, petitioner explained why he was dissatisfied with the disciplinary hearing process in his grievances and made clear that he thought the the evidence did not support a finding of guilt.  Accordingly, the grievances were sufficient to give prison officials an opportunity to review the disciplinary hearing procedure to see whether it comported with due process.  Indeed, it appears that not only did prison authorities understand petitioner's complaints, they conducted an investigation into the disciplinary hearing procedures and determined that no due process violation had occurred (Disp. Hrg. Recs., pp. 1-2, 11-16).  Moreover, the instructions on the Step 1 grievance form direct inmates to state their grievances in the space provided and to "state who, what, when, where and disciplinary case number if appropriate." and the instructions on the Step 2 form direct an inmate to give specific reasons for his dissatisfaction with the Step 1 response (Disp. Hrg. Recs., pp. 3-4, 11-12).  Inmates are not instructed to raise federal constitutional issues in their grievances, but only to set forth the factual bases of their grievances and the action requested to resolve the complaint.  Petitioner complied with the instructions and provided a sufficient factual basis to allow Respondent a fair opportunity to address the basis of his complaint.  Respondent's argument that petitioner failed to exhaust his administrative remedies is without merit and petitioner's cause of action should not be dismissed for failure to exhaust his administrative remedies.

**B.  Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States.  In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court

6

described the limited instances in which prison inmates can make out a claim that a liberty interest

has been taken without due process.

> The time has come to return to the due process principles we believe were
> correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94  S.Ct.
> 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96  S.Ct. 2532 (1976)].
> Following Wolff, we recognize that States may under certain circumstances create
> liberty interests which are protected by the Due Process Clause.  But these interests
> will be generally limited to freedom from restraint which, while not exceeding the
> sentence in such an unexpected manner as to give rise to protection by the Due
> Process Clause of its own force, nonetheless imposes atypical and significant
> hardship on the inmate in relation to the ordinary incidents of prison life.

Id.  (internal citations omitted).  The Supreme Court held in Sandin that confinement in disciplinary

segregation for twenty-three hours and ten minutes per day "did not present the type of atypical,

significant deprivation in which a state might conceivably create a liberty interest."  Sandin, 515

U.S. at 486, 115 S.Ct. at 2301.  The Court focused on the nature of the liberty interest at issue,

finding that conditions of disciplinary segregation did not differ significantly from conditions in

administrative segregation and protective custody.  Id.

Petitioner seeks reinstatement of his lost good time.  To the extent petitioner contends that

the loss of good time affects his parole eligibility he fails to state a basis of relief.  "In Texas, it is

entirely speculative whether an inmate will actually obtain parole, inasmuch as there is no right to

be released on parole. . . . In fact, we have expressly held that there is no constitutional expectancy

of parole in Texas."  Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997).  Without such an

expectation, petitioner is not entitled to due process following the loss of good time credits insofar

as the loss affects his eligibility for parole.

In addition to the parole scheme in Texas, some inmates are entitled to early release under

a mandatory supervision program in which a prisoner sentenced to the institutional division can

serve the remainder of his term outside the prison, not on parole, but under the supervision and

7

control of the pardons and paroles division.  Id., 104 F.3d at 768 (citing Tex. Code Crim. P. Ann. art. 42.18 § 2(2)).  Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date.  Tex. Gov't Code Ann. §508.147 (Vernon 2002).

The Fifth Circuit has determined that prior to September 1, 1996, the mandatory supervision program created a constitutional expectation of early release.  Malchi v. Thaler, 211 F.3d 953, 957-958 (5th Cir. 2000).  The mandatory supervision scheme was revised in 1998 and the language in the new section was designed to avoid creating a protected liberty interest. Hudson, 242 F.3d at 536, n. 1.  However, despite the apparent intent of the legislature, the Fifth Circuit has not yet decided whether the loss of good time credits implicates due process concerns under the current statute, but has assumed that it does.  Id. at 536.  Also, the Texas Court of Criminal Appeals has held that the language of the statute does create a liberty interest in mandatory supervision.  Ex Parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).

Some inmates are not eligible for release to mandatory supervision because of the nature of their offense.  In his original petition, petitioner indicated that he is eligible for release to mandatory supervision (D.E. 1, p. 5).  Respondent avers that petitioner is not eligible for release to mandatory supervision because his holding conviction was a second-degree felony enhanced by two prior consecutive felony convictions, one of which was for aggravated robbery with a deadly weapon.  Respondent argues that under the statute in effect at that time, a felony conviction which included a finding of use of a deadly weapon made a defendant ineligible for mandatory supervision release, citing Tex. Code Crim. Pro. arts. 42.12 § 3(g)(a)(D)(2) and  42.18 § 8(b) (West 1987)(now Tex. Gov't Code § 508.149(a)(1)).  The statutes cited by respondent address probation criteria, rather than mandatory supervision criteria and are inapposite to a discussion of whether petitioner is eligible for release to mandatory supervision.

8

Nevertheless, petitioner is not eligible for release to mandatory supervision because his holding conviction is for second degree robbery, which was one of the excepted offenses at the time he committed his crime.  See TEX. CODE CRIM. PRO. art. 42.18, § 8(c)(10)(Vernon 1988). Because petitioner is not eligible for release to mandatory supervision, he has failed to make out a claim that he is entitled to habeas corpus relief.

## C.  Certificate of Appealability

The Supreme Court has stated that the showing necessary for a Certificate of Appealability ("COA") is a substantial showing of the denial of a constitutional right.  Hernandez v. Johnson, 231 F.3d 243, 248 (5th Cir. 2000)(citing Slack v. McDaniel, 529 U.S. 473, 483-484 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further.  See Clark v. Johnson, 202 F.3d 760, 763 (5th Cir. 2000).  Specifically, where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Slack, 529 U.S. at 484.  A determination of the merits of a claim should not be part of the decision to issue a COA.  Rather, it is the debatability of the underlying constitutional claim, rather than its resolution, that controls whether a COA should issue.  Miller-El v. Cockrell, 537 U.S. 332, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance.

9

**RECOMMENDATION**

Based on the foregoing, it is recommended that respondent's motion for summary judgment (D.E. 10) be granted and petitioner's cause of action for habeas corpus relief be dismissed.  It is further recommended that should petitioner seek a Certificate of Appealability, it be denied.

Respectfully submitted  this 27th day of May, 2005.


B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

10

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).